## ESSEX COUNTY COURT OF COMMON PLEAS.

THEODORE DE GROOT, PETITIONER-APPELLEE, v. HENRY BECKER & SONS, INC., RESPONDENT-APPELLANT.

Decided June 2, 1939.

Editor's Note—See opinion of Workmen's Compensation Bureau, 17 N. J. Mis. R. 384.

For the petitioner-appellee, *Nathan A. Whitfield.*

For the respondent-appellant, *Kellogg & Chance.*

HARTSHORNE, C. P. J. This is a fact case. Furthermore, the fact is a medical one, and one where the medical experts differ as to the basic medical theory—whether or not a brain tumor was or can be aggravated by trauma.

Petitioner was a driver for respondent milk company, and while on his route, was hit October 6th, 1935, as he was getting off his wagon, by a third party's automobile. To this all agree. All further agree that at that time, though unknown to anyone, petitioner had at least an incipient brain tumor. But as to whether this shock did or could have aggravated this incipient unknown tumor are the crucial points at issue.

As to the former, there is evidence that petitioner was dazed or unconscious for a while after the accident, that bystanders saw him holding his head after the accident, that he told his own doctor three days later that his head had been hit, and that he suffered pain and headaches from the time of the accident, through intermediate treatment, to the operation for the tumor, February 8th, 1937. On the other hand, he

was able to go to get his horse after the accident, and the hospital record shows no complaint or treatment of his head. On this point the weight of evidence would indicate that there was a blow to petitioner's head, but not of such severity, or with such a sharp instrument, as to require treatment, when compared with his other injuries.

We now turn to the second point, *i. e.,* whether this blow did, in fact, aggravate the then existing, but unknown, tumor. Here we have a definite split of medical theory, each side supported by a series of medical experts of admitted ability. It might be added that due to petitioner's comparative good health previous to the accident, and his almost continuous headaches thereafter, respondent undertook to have him diagnosed and cared for by Dr. Dowd, who is well known in this state. And it was not till after the operation, which occurred much later, and showed a partially calcified tumor, that respondent itself, or its physicians, seems to have had much question as to the connection of the accident with petitioner's suffering in his head.

This question, then raised for the first time, was based (1) upon the fact assumption, now found false, that there was no blow to the head, (2) upon the medical assumption that trauma cannot affect a brain tumor at all, and (3) that the operation a year and a half after the accident indicated that there had been no blow to the head. Of course, theories 2 and 3, *supra,* seem inconsistent, because if trauma could not affect a tumor, the tumor doubtless would not show the trauma. So the very fact that respondent's physicians rely upon what the operation showed, makes somewhat questionable their own theory that trauma can never affect a brain tumor.

As to their further theory, that the tumor, as found by the operation, showed that there had been no trauma, they base the fact that it had not been dislodged from a position which it had evidently occupied for some years, and that there was no break visible in the blood vessels in the part not calcified.

Bearing in mind, however, that a concussion of the brain may run practically the entire gamut of degrees of force, it would seem clear that the blow might have been such as to

cause a concussion without dislodging the tumor, or without breaking the blood vessels themselves. Furthermore, there is much medical evidence to the effect that nature's curative effects would, in the course of a year or more (which have intervened between the accident and the operation), have eliminated the traces of hemorrhage. This also is quite regardless of the fact that the tabs taken from the tumor were so limited that they might well not have shown vestiges of hemorrhage which did exist elsewhere in the tumor.

In other words, the medical theory relied on by respondent's physicians, appears based either (a) upon an assumption false in fact, or (b) upon one which they themselves question, or (c) based upon insufficient evidence.

As opposed to respondent's theory, we have, as before stated, the medical judgment of a series of outstanding men, based upon the fact that there was a blow to the head, and upon the further fact of a continuance of head symptoms for a year and a half, from the time of the accident till the time of the operation. Upon this basis these experts all conclude both that trauma can affect a brain tumor, and that the trauma in this case did affect and aggravate this particular tumor.

Under all the circumstances, the evidence, both lay and medical, would seem to support the petitioner, and the award in his favor, made by the Compensation Bureau, will accordingly be affirmed.